UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOHN CANTRELL,                    )
                                  )
            Plaintiff             )
                                  )
        v.                        )    Case No. 2:04 cv 364
                                  )
SONYA A. MORRIS,                  )
                                  )
            Defendant             )

OPINION AND ORDER

This matter is before the court on the Motion to Dismiss filed by the defendant, Sonya Morris, on October 22, 2004.  For the reasons set forth below, the motion is **DENIED IN PART.**

Background

The plaintiff, John Cantrell, was a Public Defender in the East Chicago City Court from January 3, 2002 until his termination by the defendant, East Chicago City Judge Sonya Morris, on January 31, 2004.  Morris allegedly terminated Cantrell because he supported the candidacy of Corinth Bishop II for City Judge in the primary election, which Morris won.  In his complaint, Cantrell asserts that this termination was in violation of 42 U.S.C. ß1983 and his constitutional rights of free speech and association under the United States and Indiana Constitutions. He seeks compensatory and punitive damages as well as equitable relief in the form of an injunction for reinstatement with back pay and "restoration of all benefits and emoluments of employment." *See* Complaint, p. 4.

<u>Discussion</u>

Morris' first argument in support of dismissal is that the City of East Chicago is an indispensable party under Federal Rule of Civil Procedure 19(a) and that Cantrell's failure to join the City requires dismissal of the case under Federal Rule of Civil Procedure 12(b)(7) which states that a claim is subject to dismissal for "failure to join a party under Rule 19." Rule 19(a), in turn, states:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Neither of the tests set forth in Rule 19(a) offers a "precise formula for determining whether a particular nonparty must be joined." Wright, Miller & Kane, *Federal Practice and Procedure; Civil 3d* ß1604. Rather, the court must reach a decision under Rule 19(a) "in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." Section 1604 at p. 39. In this respect, the Rule 19(a)

2

tests require an analysis similar to the factors set forth in Rule 19(b).[1]

If the court finds that the nonparty in question should be joined, Rule 19(a) directs the court to correct the nonjoinder by ordering the person joined.  Only if the person cannot be joined does the court decide whether the action must be dismissed pursuant to Rule 19(b).  *See Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001); *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999) ("Only if the court concludes, based on [the Rule 19(a)] factors, that the party should be included in the action but it cannot be, must it go on to decide whether the litigation can proceed at all in the party's absence.").  In considering a motion to dismiss, the court will look only at the pleadings and will accept as true all of the facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  *See Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 974-75 (7th Cir. 1989) (construing Rule 12(b)(7)); *Trademark Retail, Inc. v. Apple Glen Investors, LP*, 196 F.R.D. 535, 536 n.2 (N.D. Ind. 2000)(same).

Morris argues that the equitable remedies Cantrell seeks require the City of East Chicago to be joined as a party under

---

[1] Rule 19(b) requires the court to consider (1) the extent to which judgment rendered in the nonparty's absence might be prejudicial to the nonparty or the existing parties, (2) the extent to which the court can shape relief in order to reduce the prejudice, (3) whether judgment rendered without the nonparty would be inadequate, and (4) whether the plaintiff has an adequate remedy if the action is dismissed for failure to join the nonparty. Because the issues presented in this motion to dismiss are resolved without progressing to an analysis under Rule 19(b), these factors need not be allowed.

Rule 19(a) with respect to those claims.  The availability of
equitable relief depends on the capacity in which Morris is being
sued.  *See* ***Brandon v. Holt***, 469 U.S. 464, 469, 105 S.Ct. 873,
877, 83 L.Ed.2d 878 (1985).  However, Cantrell's complaint fails
to state whether Morris is being sued in her individual or
official capacity.  Nevertheless, the complaint also appears to
request relief under both theories by seeking punitive damages as
well as injunctive relief.  *See* ***Wynn v. Southward***, 251 F.3d 588,
592 (7th Cir. 2001) (noting that punitive damages are available
only for "individual capacity" claims); ***Miller v. Smith***, 220 F.3d
491, 494 (7th Cir. 2000) (observing that injunctive relief is
available only in "official capacity" suits).  Under these
circumstances, the court need not assume that the plaintiff is
suing Morris solely in her official capacity.  *See* ***Brandon***, 469
U.S. at 469, 105 S.Ct. at 877; ***Wynn***, 251 F.3d at 592; ***Miller***, 220
F.3d at 494; ***Hill v. Shelander***, 924 F.3d 1370, 1373 (7th Cir.
1991).

The claim for relief on which Morris relies to argue that
the City of East Chicago is "indispensible" is Cantrell's request
for a "mandatory injunction requiring reinstatement of the Plain-
tiff with back pay, and restoration of all benefits and emolu-
ments of employment."  Therefore, the court will proceed under
the assumption that Cantrell seeks this equitable relief against
Morris in her official capacity.  ***Van Kast v. Board of Education
of the City of Chicago, Illinois***, No. 87 C 2582, 1990 WL 60720,
at *1-2 (N.D. Ill. April 20, 1990) (noting that "backpay alone is

4

considered a legal remedy, [but] an award of backpay and rein-statement constitutes equitable relief.").

Taking the facts of the complaint as true, Morris was the final policymaker on decisions to hire or fire City Court employees. *See* Complaint, ∂ 5 ("she has the sole power and authority to hire and fire employees of the Court and to prescribe the conditions of their work.").  Therefore, a suit against Morris for firing Cantrell is a suit against the government entity she represents.  *See **Kentucky v. Graham***, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects, other than name, to be treated as a suit against the entity."); ***Monnell v. Department of Social Services of the City of New York***, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978).  This entity is the City Court, not the City of East Chicago.

Although the City Court owes its existence to legislative action by the City, the City Court is a separate entity from the City itself by Indiana law.  *See* I.C. ß33-35-1-1 *et. seq.*  The City Court was created by ordinance of the City of East Chicago.  *See* I.C. ß36-4-1-1 (classifying cities with populations of less than 35,000 as Third class cities; Quick Facts: City of East Chicago, http://www.eastchicago.com/quickfacts.html (last visited May 17, 2005) (stating that the population of East Chicago is 32,414).  *See also* I.C. 33-35-1-1(a) (stating that Third class cities may establish a City Court by ordinance).  But it is

5

Indiana statutory law, rather than the East Chicago City Council, that dictates how the City Court shall function. *See* I.C. ß33-35-1-1 *et. seq.* Moreover, the City Court Judge is an independently elected official who, by Indiana law, has the power to establish all "rules for conducting the business of the court." *See* I.C. ß33-35-2-1. *See also* I.C. ß33-35-1-1 (calling for the independent election of City Court Judges). As further evidence of the City Court's independence, the Indiana Attorney General, and not the City Attorney, is required to defend a City Court Judge when she is sued for civil damages or equitable relief. *See* I.C. ß33-23-13-3. For these reasons, the court finds Morris represented the City Court, and not the City of East Chicago, when she fired Cantrell.

Despite the City Court's independence, Indiana law requires the City to pay for the operational expenses of the City Court. *See, e.g.,* I.C. ß33-35-3-3(e) (bailiff's salary is set by the City common council); I.C. ß33-35-3-5(c) (salary of the Court referee is "fixed by the judge subject to the approval of the common council of the city); I.C. ß33-35-3-7 (books, dockets, and supplies of the City Court are provided at the expense of the City); I.C. ß33-35-4-2(e) (City Court Judge's salary is prescribed by the City). *See also **Sholes v. Sholes***, 760 N.E.2d 156, 164-65 (Ind. 2001); ***Gary City Court v. City of Gary***, 489 N.E.2d 511, 511-13 (Ind. 1986); ***Hatcher v. State***, 376 N.E.2d 1115, 1115 (Ind. 1978).

In *City of Gary*, the Indiana Supreme Court found that a City Court "has authority to issue mandate orders requiring the appropriation and payment of reasonably necessary funds for the court." 489 N.E.2d at 511. The Indiana Supreme Court defined the scope of this mandate power as enabling the City Court to obtain funds "shown necessary to maintain the court at a degree of efficiency necessary to discharge its duties and neither extravagant, arbitrary, nor unwarranted." 489 N.E.2d at 512. *See also* **Hatcher**, 376 N.E.2d at 1115. Therefore, the Gary City Court could order the City to pay for facility repairs. *See* **City of Gary**, 489 N.E.2d at 513. Similarly, the **Sholes** court held that a court's inherent power to order payment of funds necessary for "court-related functions" allowed a state court to require payment of appointed attorneys from public funds. *See* 760 N.E.2d at 164-65. The statutory fiscal relationship between the City Court and City of East Chicago, as well as the Indiana Supreme Court's holdings in **Sholes** and **City of Gary**, direct the conclusion that the City of East Chicago is responsible for any financial obligations associated with the equitable remedies sought by Cantrell.

If Cantrell had continued in his employment as a Public Defender, the City of East Chicago would have appropriated funds for his salary and "benefits and emoluments of employment" as part of the daily operating expenses of the City Court. *See* **Sholes**, 760 N.E.2d at 164-65. The equitable award of "backpay," which is a decision that the ex-employee is "entitled to accrued

but uncollected wages or benefits," simply provides for these funds after the fact.  *See* Black's Law Dictionary 148 (8th ed. 2004).  *See also **Van Kast***, 1990 WL 60720, at *1-2 (noting that the purpose of equitable relief is to restore the injured party to the "status quo ante.").  Thus, backpay coupled with reinstatement is an operational expense.  *See **Sholes***, 760 N.E.2d at 164-65; ***City of Gary***, 489 N.E.2d at 511.  Though the timing and circumstances of the payment is different, the designation of the money and benefits is the same.

In addition, public policy dictates that the City of East Chicago is responsible for the implementation of the equitable award sought by Cantrell.  According to the Supreme Court, "The central aim of the Civil Rights Act was to provide protection to those persons wronged by the 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" ***Owen v. City of Independence, Mo.***, 445 U.S. 622, 650-51, 100 S.Ct. 1398, 1415-16, 63 L.Ed.2d 673 (1980) (*quoting **Monroe v. Pape***, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) (internal quotation and alteration omitted).  If Morris has exclusive hiring authority, she can reinstate Cantrell, but she cannot pay him our of her current budget.  If the City also is under no responsibility to reimburse Cantrell's lost salary and benefits, then Cantrell essentially is without a remedy in equity.  *See* 42 U.S.C. ß1983 (providing for equitable relief).  Although Morris can order the

City to pay for these expenses under *Sholes* and *City of Gary*, this mandate would follow any judgment in this case.

Cantrell's argument that the State of Indiana must pay any judgment entered against Morris is not well-taken.  Indiana Code ß33-38-12 *et. seq.* addresses the "Defense and Indemnification of Judges for Civil Damages."  When sought with an injunction directing reinstatement, backpay is an equitable remedy, not a damages remedy.  *See Van Kast*, 1990 WL 60720, at *1-2.  While the State of Indiana may be required to pay any civil damages awarded to Cantrell under this law, the statute is inapplicable to the relief requested here.[2]

The equitable relief sought by Cantrell creates a financial interest in the outcome of this case for the City of East Chicago that the City cannot protect unless it is a party to this suit.  The City must be joined under Rule 19(a)(2) because it "will be affected by the action or adequate relief cannot be awarded in [its] absence."  Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* ß1617 at p. 271.  More specifically, Rule 19(a)(2) states that the City must be joined if it has an inter-est in the litigation that would be impaired practically if not joined or if nonjoinder would leave the parties or City subject to inconsistent obligations.  Here, Morris does not have the same

---

[2] The court has considered and rejected the possibility that the State of Indiana is a necessary party under Rule 19(a).  Indiana H.B. 1093, 114th Gen. Assem., First Reg. Sess. (2005), currently pending before the Indiana legislature, would amend I.C. ß33-38-12-4, which currently requires the State to pay for civil damages or settlements in suits against a City Judge.  The amendment would make payment at the Governor's discretion.  This court finds that the language of this Bill reveals the legislature's intent to consider payment only after a lawsuit has ended and civil damages have been awarded.

interest in litigating against an equitable judgment as would the
City because the City Court cannot appropriate the funds to pay
the judgment.  If the City is not joined, its obligation to
provide the equitable relief will be decided without an opportu-
nity for the City of defend.  Moreover, nonjoinder will lead to
additional litigation if Morris must order payment pursuant to
**Sholes.**  Therefore, joinder of the City is necessary under Rule
19(a)(2).

However, in arguing that this case must be dismissed under
Rule 12(b)(7) because Cantrell failed to name the City as a
defendant, Morris fails to observe that Rule 19 only permits the
court to consider dismissal if joinder is not feasible.  *See* Rule
19(a) ("If the person has not been so joined, the court shall
order that the person be made a party.").  Morris makes no
argument why joinder of the City would not be feasible in this
case, and the court can see none.  Cantrell predicates subject
matter jurisdiction upon a federal question, which the addition
of the City will not disturb.  *See* 19 U.S.C. ß1331.  Service of
process and venue also do not appear to be an issue.  *See* Rule
19, Advisory Committee Notes, 1966 Amendment (General Considera-
tions).  Accordingly, Morris' motion to dismiss the case under
Rule 12(b)(7) is denied.

Morris also seeks dismissal pursuant to Rule 12(b)(6) of
Cantrell's claim that Morris violated his rights to free speech
and association under Article I, ß9 of the Indiana Constitution.
Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal

10

of a complaint if it fails to state a claim upon which relief can be granted.  A complaint may be dismissed in accordance with Rule 12(b)(6) if it is beyond doubt that the plaintiff can prove no sets of facts which could support his claim.  *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429-30 (7th Cir. 1996); *Mid America Title Company v. Kirk*, 991 F.2d 417, 419 (7th Cir. 1993).  As with a motion to dismiss under Rule 12(b)(7), the court will accept as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  *Horwitz v. Board of Education of Avoca School District No. 37*, 260 F.3d 602, 618 (7th Cir. 2001); *Pleva v. Norquist*, 195 F.3d 905, 911 (7th Cir. 1999); *Mid America*, 991 F.2d at 419.

Morris' first argument in support of dismissing Cantrell's state constitutional claim is that the Eleventh Amendment of the Constitution prohibits this court from "exercising jurisdiction over claims for injunctive relief against state officials based on state law."  *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S.Ct. 900, 908-09, 79 L.Ed.2d 67 (1984).  While this statement of law is true, it is of no consequence to this case.  First, this court can enjoin Moris in her official capacity for any violations of the First Amendment of the United States Constitution.  *See generally Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  With respect to the Free Speech provision of the Indiana Constitution, this court

can enjoin Morris because the City Court is not an "arm of the state," nor is the City Judge a state official.  *See* **Mount Healthy School District Board of Education v. Doyle**, 429 U.S. 274, 280, 97 S.Ct. 572, 572-73, 50 L.Ed.2d 471 (1977); **Kashani v. Purdue University**, 813 F.2d 843, 844-48 (7th Cir. 1987); **Kelley v. City of Michigan City**, 300 F.Supp.2d 682, 686-87 (N.D. Ind. 2004) ("[I]n deciding whether an entity is immune from suit, we must determine whether it is more like a county or city or more like an arm of the state.")(internal quotation and alteration omitted).  In determining whether the City Court is a state entity, three factors must be considered: "the extent of the entity's financial autonomy from the state, its general legal status, and whether it serves the state as a whole or only a region."  *See* **Kelley**, 300 F.Supp.2d at 687 (internal quotations and alteration omitted).  *See also* **Kashani**, 813 F.2d at 845-48. Of the three, "[t]he most important factor is the extent of the entity's financial autonomy from the state."

Because the City Court plainly is "more like a county or city" under the **Kashani** factors, the City Judge may be sued for injunctive relief without implicating the Eleventh Amendment. *See* **Mount Healthy**, 429 U.S. at 280, 97 S.Ct. at 573.  As already discussed in length, the City Court and City Judge rely on the City of East Chicago for total financial support, rather than on the State of Indiana.  The City Court even has the power to "tax" the City by mandate in order to secure operational funds.  *See* **Sholes**, 760 N.E.2d at 154-54; **City of Gary**, 489 N.E.2d at 511-13;

12

*Hatcher*, 376 N.E.2d at 1115.   Second, the City Court enjoys the
legal independence from the State of Indiana that a county or
city enjoys.   The City Judge is elected rather than appointed,
and the City Judge has the statutory authority to establish the
rules for running the business of her court.   *See* I.C. ß33-35-1-
1, ß33-35-2-1.   Moreover, Indiana's Budget Agency Act expressly
excludes cities from the definition of "state agency."   *See* I.C.
ß4-12-1-2(d).   Third, by its very nature, the City Court is a
court of limited jurisdiction which serves only the City of East
Chicago, rather than the entire region.   *See, e.g.,* I.C. ß33-35-
2-5.   Therefore, the Eleventh Amendment is no bar to Cantrell's
claim for prospective injunctive relief against Morris.   *See*
*Mount Healthy*, 429 U.S. at 280, 97 S.Ct. at 573.

Even if Cantrell can obtain injunctive relief, Morris argues
that no private right of action for damages exists under Article
I, ß9 of the Indiana Constitution.   Article I, Section 9 states:

> No law shall be passed, restraining the free
> interchange of thought and opinion, or re-
> stricting the right to speak, write, or
> print, freely, on any subject whatever: but
> for the abuse of that right, every person
> shall be responsible.

Setting the question of available remedies aside, at least one
Indiana court has recognized the availability of an implied
private right of action under Section 9.   *See* **Lach v. Lake**
**County**, 621 N.E.2d 357, 358-60 (Ind. App. 1993), *trans. denied*,
___ N.E.2d ___ (Ind. Dec. 29, 1993).   *See also* **Klunk v. County of**
**Saint Joseph**, 170 F.3d 772, 777-78 (7th Cir. 1999)(concluding

13

that Indiana recognizes a private right to action under Article I, Section 9).

In *Lach*, a lieutenant of the Lake County Sheriff's Department was suspended without pay for political speech.  In reversing the trial court's determination that the suspension was proper, the Indiana Court of Appeals observed, "The law is clear that public employees do not abandon their First Amendment rights upon entering the work place."  *Lach*, 621 N.E.2d at 358 (internal quotation omitted).  The *Lach* court then applied the *Pickering/ Connick* test articulated by the Supreme Court for speech by a public employee to determine that the lieutenant's speech was protected.[3]  *See Indiana Department of Highways v. Dixon*, 541 N.E.2d 877, 881 (Ind. 1989) (articulating the *Pickering/Connick* test as adopted by the Indiana Supreme Court).  *See also Connick v. Meyers*, 461 U.S. 138, 144-54, 103 S.Ct. 1684, 1688-93, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 574, 88 S.Ct. 1731, 1737-38, 20 L.Ed.2d 811 (1968).  In so holding, the *Lach* court stated that "the free speech guarantees

---

[3] As explained by the Indiana Supreme Court, the *Pickering/Connick* test is as follows:

> First, the employee must be speaking on a matter of public concern about which free and open debate is vital to the decision making of the community.  Second, the reviewing court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in running an efficient operation.  Third, the employee's protected conduct must be a motivating factor in the State's decision to fire him. (internal citations omitted)

> *Dixon*, 541 N.E.2d at 881

14

of the Constitutions of Indiana and the United States demand that
a governmental body demonstrate the necessity for squelching
speech on matters of public concern. . . .  Indiana's Constitu-
tion, statutory provisions, and common law require a finding that
Lach's statements constituted protected speech. . ."  621 N.E.2d
at 360.  Therefore, the *Lach* court found that the trial court had
erred in finding the suspension appropriate.  *See* 621 N.E.2d at
360.

Although the nature of Lach's discipline suggests that Lach
was suing to recover damages, the appellate court remanded the
case without reaching the question of remedies, and the Indiana
Supreme Court denied transfer.  *See Lach*, 621 N.E.2d at 360.  No
other Indiana court has addressed whether Section 9 alone sup-
ports an implied private right of action for damages.  In the
context of other sections of the Indiana Bill of Rights, only one
Indiana court has concluded, without any discussion, that an
implied private right of action for damages exists under Section
21.  *See Orr v. Sonnenburg*, 542 N.E.2d 201, 205 (Ind. App. 1989)
(holding that mental institution patients who performed manual
labor at the institution were performing "particular services"
under Article I, ß21 and summarily determining that therefore,
the patients could recover damages under Section 21).  However,
the Indiana Supreme Court vacated the holding of *Orr* in conclud-
ing that such labor did <u>not</u> constitute "particular services"
under Section 21 in *Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind.
1991).

15

Beyond *Orr*, Indiana courts have declined to address the question of an implied right of action.  *See, e.g., Bayh*, 573 N.E.2d 398 (considering Article I, Section 21 and expressly stating that "we do not reach the subsidiary [issue of] . . . the distinction between an award of damages and back wages"); *Young v. Indiana Department of Natural Resources*, 789 N.E.2d 550, 559 n.5 (Ind. App. 2003), *trans. denied*, 804 N.E.2d 754 (Ind. Oct. 22, 2003) (expressly declining to decide whether a private cause of action for damages exists under the Indiana Constitution); *Hilburt v. Town of Markleville*, 649 N.E.2d 1036, 1041 (Ind. App. 1995) ("Even assuming, but expressly not deciding, that an action for damages . . . may be brought under Section 12, [the plain-tiff's] constitutional arguments fail on the merits").

The Northern and Southern Districts of Indiana also are split on the question of an implied right of action for damages. Relying on *Bayh, Hilburt,* and *Orr,* the Northern District of Indiana concluded that a cause of action for damages exists in *Discovery House, Inc. v. Consolidated City of Indianapolis*, 43 F.Supp.2d 997, 1004 (N.D. Ind. 1999).  However, this court is reluctant to endorse the reasoning of *Discovery House* in light of the true holdings of the Indiana cases on which *Discovery House* relied, as well as the heavy critique of *Discovery House* by the Southern District of Indiana.  *See, e.g., Raines v. Strittmatter*, No. 1:03-cv-10289-JDTTAB, 2004 WL 2137634 (S.D. Ind. June 29, 2004) (criticizing *Discovery House* and finding no private right of action); *Estate of O'Bryan v. Town of Sellersburg*, No. 3:02CV

16

00238-DFH-WGH, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004)
(same); *Malone v. Becher*, No. NA 01-101-C H/H, 2003 WL 220080737,
at *18-19 (S.D. Ind. Aug. 29, 2003) (same); *Boczar v. Kingen*, No.
IP 99-0141-C-T/G, 2000 WL 1137713, at *24-25 (S.D. Ind. March 9,
2000), *aff'd,* 2001 WL 468254 (7th Cir. 2001) (same).  In addi-
tion, subsequent cases in the Northern District of Indiana have
declined to address the issue.  *See Kelley*, 300 F.Supp.2d at 688-
89 (avoiding the right of action question by granting summary
judgment on the substance of the plaintiff's claims); *Schele v.
Porter Memorial Hospital*, 198 F.Supp.2d 979, 993-95 (N.D. Ind.
2001) (describing the current state of the law, but declining to
reach the question of an implied right because the parties had
not adequately briefed the issue).  For these reasons, as well as
the new right *Discovery House* creates without clear direction
from the Indiana Supreme Court, the court questions the
precedential value of *Discovery House*.

However, the Southern District of Indiana appears to ground
its decision that the Indiana Constitution affords no private
right of action primarily in the district court's reluctance to
break new ground for the Indiana Supreme Court.  *See, e.g.,*
*Estate of O'Bryan*, 2004 WL 1234215, at *21 ("If such a step is to
be taken, it will need to be taken by the Indiana courts, not by
a federal court whose duty is to apply existing Indiana law.");
*Malone*, 2003 WL 22080737, at *18 (same).  Thus, the decisions
within the Southern District start from this viewpoint as the
district court attempts to reason through the history and fram-

17

ers' intent surrounding the Indiana Constitution.  *See, e.g.,*
*Raines*, 2004 WL 2137634, at *4-7; *Boczar*, 2000 WL 1137713, at
*24-25.  Because of the absence of Indiana law on point, this
court is reluctant to follow the Southern District's position,
particularly in view of that court's quite natural concern for
articulating a new rule of law on behalf of the Indiana Supreme
Court.  Additionally, this court does not want to foreclose the
possibility that the Indiana Constitution permits a state law
right of action similar to the federal right articulated in
*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403
U.S. 388, 91 S.St. 1999, 29 L.Ed.2d 619 (1971).

Finally, the Indiana legislature explicitly protects the
rights of state employees to participate in political activity.
The legislative findings set forth in I.C. ß33-23-12-1 specific-
ally state that the right of state employees "to freely partici-
pate in political activity is inherent in the guarantee of free
speech contained in Article I, Section 9 of the Constitution of
the State of Indiana in Amendment I to the Constitution of the
United States."  The legislative findings further state that the
judiciary "is not less subject to constitutional strictures
against governmental interference with the exercise of speech"
and that employees of the state judicial branch "have the same
rights guaranteed to all Indiana citizens."  *See* I.C. ß33-23-12-
1.  Section 4-15-10-2 further states, "Except when on duty or
acting in an official capacity and except where otherwise pro-
vided by state or federal law, no employee shall be prohibited

18

from engaging in political activity. . . ."  The unclear state of
Indiana law regarding the rights of a private citizen to bring a
cause of action for damages under the Indiana Constitution
necessarily clouds the rights of a state employee under these
statutory provisions.  Nevertheless, this court cannot say that
the Indiana legislature did not intend to permit a damages action
for violations of free speech under the Indiana Code.  However,
the court notes that the question of a statutory right to damages
is distinct from the question of an implied right to damages
under the Indiana Constitution raised in this case.  The presence
of these statutes merely raises concerns with this court that a
finding of no implied right of action for damages may go against
any conclusion reached by the Indiana Supreme Court.

Indiana Appellate Rule 64 states that a district court "may
certify a question of Indiana law to the Supreme Court when it
appears to the federal court that a proceeding presents an issue
of state law that is determinative of the case and on which there
is no clear controlling precedent."  The claims presented by
Cantrell fit squarely within this Rule.  This court cannot
determine Cantrell's rights under his Indiana Constitutional
claim without knowing if he has an implied right of action for
damages under Article 1, Section 9.  In addition, even if such a
right exists, this court cannot determine whether such a damages
award is appropriate to Cantrell on the facts of this case
because no Indiana court has provided guidance on the issue.  In
order to resolve these issues, as well as the developing split

19

within the Northern and Southern Districts of Indiana, this court
will certify the question to the Indiana Supreme Court.

The Justices of the Indiana Supreme Court may reformulate
this question if they feel that course is appropriate.  Nothing
in this certification is intended to limit the scope of their
inquiry.

_____

For the foregoing reasons, the Motion to Dismiss filed by
the defendant, Sonya Morris, on October 22, 2004 is **DENIED IN
PART**.  The plaintiff is **ORDERED** to join the City of East Chicago
on his claims for equitable relief within 20 days of the date of
this Order.  The court hereby **CERTIFIES** the following question to
the Indiana Supreme Court: "Does a private right of action for
damages exist under Article 1, Section 9 of the Indiana Constitu-
tion, and if so, what are the elements of the action the plain-
tiff must prove?"  Pursuant to Indiana Appellate Rule 64(B), the
Clerk is **ORDERED** to provide the Indiana Supreme Court with copies
of:

1)   this Order;

2)   the docket in this case, including the
     names of the parties and their counsel;
     and

3)   the Complaint [DE 1], the Motion to
     Dismiss [DE 12], the Memorandum in Sup-
     port of the Motion to Dismiss [DE 13],
     the Response to the Motion to Dismiss
     [DE 14], and the Reply to the Motion to
     Dismiss [DE 15].

ENTERED this 17th day of May, 2005

20

s/ ANDREW P. RODOVICH
   United States Magistrate Judge