UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


JOHN CANTRELL,               )
                             )
          Plaintiff          )
                             )
          v.                 )   Case No. 2:04 cv 364
                             )
SONYA A. MORRIS, Individually )
and as Judge, East Chicago City)
Court; CITY OF EAST CHICAGO, a )
Municipal Corporation,       )
                             )
          Defendants         )


OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment filed by the defendant, Sonya A. Morris, on August 18,
2006 (DE 50); the Motion to Exclude Evidence Designated in
Support of Plaintiff's Response to Motion for Summary Judgment
filed by the defendant on September 28, 2006 (DE 57); and the
Motion for Leave to File Amended Answer to Assert Additional
Affirmative Defenses also filed by the defendant on September 28,
2006 (DE 56). For the reasons set forth below, the defendant's
motion for summary judgment is **GRANTED IN PART** and **DENIED IN
PART;** the motion to exclude evidence is **DENIED**; and the motion
for leave to file is **DENIED AS MOOT**.

Background

In order to clarify the summary judgment record, the court
first will address the motion to exclude evidence filed by the
defendant. In this motion the defendant, Sonya A. Morris, objects

to the admission of the employment form of the plaintiff, John
Cantrell, which lists his title and salary. This form, however,
was produced in discovery by the defendant, City of East Chicago.
This fact provides sufficient evidence of authenticity to survive
a challenge under Federal Rule of Evidence 901. *See Thanongsinh
v. Board of Education*, 462 F.3d 762, 779 (7th Cir. 2006)("Rule
901 does not erect a particularly high hurdle."); *Traum v.
Equitable Life Assurance Society of U.S.*, 240 F.Supp.2d 776, 781
(N.D. Ill. 2002)("The documents were provided during discovery
and defendants appendix of exhibits specifically cites to and
includes the 30(b)(6) deposition testimony that authenticates the
documents.") Cantrell's citation to the record, a series of
footnotes in his brief that routinely do not point accurately to
his exhibits, does not indicate that this document was produced
in discovery. However, there is no dispute regarding the origins
of this document. The court does not condone a careless approach
to meeting the requirements of Local Rule 56.1, but it will not
strike the evidence on this basis alone.

Morris also objects that evidence regarding whether the City
of East Chicago included the role of city court referee on its
official payroll is irrelevant. As described more fully below,
this evidence is relevant. Additionally, Morris objects to
Cantrell's testimony regarding whether Morris had any opportunity
to observe or review Cantrell's work for the City of East Chicago
as irrelevant. Conceivably, such evidence could concern a defense
in this case. However, based upon the parties' arguments, this

2

issue is not reached, and the court does not rely on this evidence.

Finally, Morris objects to statements made by Cantrell in the course of his deposition relating to conversations that he had with third-parties during Morris' campaign for East Chicago City Court Judge. Cantrell counters the hearsay objection with no more than an unsupported statement that Cantrell is "entitled to relay these inquiries." Cantrell only is entitled to relay these inquiries from non-parties if they are not offered for their truth, or the hearsay objection is cured. Federal Rule of Evidence 801(c)("Hearsay is a statement . . . offered in evidence to prove the truth of the matter asserted."). *See also **U.S. v. Harper**,* 463 F.3d 663, 668 (7th Cir. 2006). At this stage, the court does not rely on this evidence in denying Morris' motion for summary judgment. Consequently, Morris' objections are either denied or moot. Accordingly, the motion to exclude is **DENIED**.

Rendered in the light most favorable to the non-moving party, Cantrell was hired in April 2003 as a public defender by East Chicago City Court Judge Eduardo Fontanez. (Deposition of John Cantrell, p. 24) Initially, Cantrell represented criminal defendants during the court's regular Wednesday morning court call, but he was asked by Fontanez to serve as a judge *pro tempore* during the court's Tuesday and Thursday civil call. (Cantrell Dep. pp. 27-28) Cantrell testified that the majority of his employment with the East Chicago City Court was spent with these duties. (Cantrell Dep. p. 30) However, he did not complete

additional employment forms, and his compensation did not change with this transition. (Cantrell Dep. pp. 30-31)

Cantrell's duties as judge *pro tem* included "signing off" on motions and pleadings, hearing trials, and ruling on motions. (Cantrell Dep. p. 28) He stated that he independently made decisions on evidentiary matters, at times ruling from the bench, and entered his own orders and judgments. (Cantrell Dep. p. 29) From this point until his termination, Cantrell generally did not serve as a public defender, though this remained his title with the City. (Cantrell Dep. p. 30)

During this same period of time, the city court judge position occupied by Fontanez was subject to an election in which defendant Sonya Morris ran against East Chicago public defender Corinth Bishop II, in the Democratic primary. (Morris Dep. pp. 8, 16, 17; Cantrell Dep. p. 41) Morris testified that prior to her election, she was not aware of John Cantrell. (Morris Dep. p. 8) She also stated that, though she had met Cantrell's father, Robert, in 2003, she was not aware that Robert Cantrell was "involved in East Chicago politics." (Morris Dep. p. 9) Both Cantrell and his father supported Morris' challenger in the primary. (Cantrell Dep. p. 41) Morris testified only that she was aware of the senior Cantrell's support for her opponent.(Morris Dep. p. 9)

Morris, who defeated Bishop in the primary, apparently became aware of at least Robert Cantrell's involvement in East Chicago politics:

Q.    Did you have a Republican challenger in
the Fall?

A.    No.

Q.    So, therefore, no one challenged you
after you won the Democratic primary for
East Chicago City judge?

A.    No.

Q.    Why didn't you know that you had no
opponent?

A.    Prior to the time, the message that I
received, with regards to the father
Cantrell, was that if I did not consider
including addiction and family care as
the only drug-related facility in the
court, that he would run Eduardo Fonta-
nez against me.

Q.    As a Republican?

A.    I don't know as what.

(Morris Dep. p. 11)

Morris was elected in the Fall and took office on January 1,
2004. (Morris Dep. p. 8) Cantrell, on the first Tuesday or
Thursday of 2004, arrived at the East Chicago court to serve as
he had under Judge Fontanez. (Cantrell Dep. p. 56) Morris told
Cantrell that she still was adjusting to the court and that he
should return for his next regular time. Cantrell again was sent
home when he next appeared at the East Chicago court to serve as
judge *pro tem*. (Cantrell Dep. p. 56) This pattern repeated until
the end of January 2004, when Morris informed Cantrell that he no
longer was employed in the East Chicago court. (Cantrell Dep. p.
57). Morris sent Cantrell a letter confirming that his last day
of employment was January 30, 2004. (Cantrell Dep. Ex. A)

In February, Morris hired Elizabeth Zougras-Rizos to serve as her court referee. Morris explained, however, that during 2004, the East Chicago court had no position entitled court referee:

> And then [I] reviewed my employee list, and
> did not see a referee position . . . But I
> did know that I learned there were three
> public defender positions, and that [Can-
> trell] was holding one of them, but as a
> referee. And, understanding the volume in the
> court, I knew that I needed a referee, and
> that it would have to be someone that I knew
> and trusted. And, because he was holding that
> position as referee, I wanted someone in that
> position that I knew and trusted. That's why
> he was removed from that position, and some-
> one else was put into that place.

(Morris Dep. p. 19)

Zougras-Rizos, who had served during Morris' campaign on her election committee, initially was hired with the title "public defender/referee" and paid the same $825 biweekly that Cantrell had earned beginning in January 2004. (Pltf's Resp. Ex. C) In 2005, the City of East Chicago adopted an updated salary ordinance that specifically included the position of referee for the city court and provided a salary for this position of $1,000 biweekly. (Pltf's Resp. Ex. C)

On August 31, 2004, Cantrell sued Morris. (Comp. p. 1) He alleged that his termination violated the First Amendment and the free speech provisions of Article 1, §9 of the Indiana Constitution. (Comp. p. 3) Cantrell sought injunctive relief, specifically reinstatement, along with compensatory and punitive damages. (Comp. p. 4)

Morris moved to dismiss the complaint on the basis that Cantrell failed to join the City of East Chicago as an indispensable party and that the free speech provision of the Indiana Constitution does not provide a private right of action. (Motion to Dismiss, October 22, 2004) This court, in a decision entered May 17, 2005, assumed, based on the relief sought, that Morris was being sued in her individual capacity and in her official capacity with the East Chicago City Court. However, because damages ultimately would be the responsibility of the City of East Chicago, this court concluded that the City was an indispensable party and ordered them joined to the case. The question of whether the Indiana Constitution, Article I, §9, provided a private right of action was certified to the Indiana Supreme Court.

On May 5, 2006, Cantrell filed an amended complaint explicitly naming Morris in her official and individual capacities and naming the City of East Chicago. The Indiana Supreme Court issued a response to the certified question on June 21, 2006. *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006). The Indiana Supreme Court phrased the question to ask "whether the Indiana Constitution gives rise to a civil damage remedy, as opposed to whether, if a violation of Section 9 is established, common law tort doctrines support a damage claim." *Cantrell*, 849 N.E.2d at 491. The Indiana Supreme Court declined to address whether termination of a public employee may give rise to a violation of the Indiana Constitution. *Cantrell*, 849 N.E.2d at 507. The Supreme Court concluded

7

that "a terminated employee has no private right of action for damages that arises under [Article I, §9]." *Cantrell,* 849 N.E.2d at 492. However, if a public employee's termination can serve as a basis for the tort of wrongful discharge, the claim will be subject to the Indiana Tort Claims Immunity Act. *Cantrell*, 849 N.E.2d at 507.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Windle v. City of Marion*, *Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d

8

1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also **Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The First Amendment prohibits conditioning public employment upon political affiliation. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 74, 110 S.Ct. 2729, 2736, 111 L.Ed.2d. 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 515, 100 S.Ct. 1287, 1293, 63 L.Ed.2d. 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 359, 96 S.Ct. 2673, 2683, 49 L.Ed.2d. 547 (1976). This prohibition does not apply when the "nature of [the] job makes political loyalty a valid qualification" for the effective performance of the position. *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005). When the position involves "the making of policy and thus the exercise of political judgment," political affiliation is a legitimate criteria supporting employment decisions. *Riley,* 425 F.3d at 359.

In determining whether political loyalty will support an employment decision, the court focuses on the inherent character-

istics of the position itself, as described by an official job
description. **Allen v. Martin**, 460 F.3d 939, 944 (7th Cir. 2006).
"[I]f no basis is presented for thinking the official job de-
scriptions systematically unreliable . . . , the elected offi-
cials can rely on them, even if a plaintiff is prepared to
testify (self-servingly) that the job description doesn't actu-
ally describe what he does." **Riley**, 425 F.3d at 360. A job
description alone may not provide the singular focal point. In
other cases, "the duties and responsibilities of a particular
position are clearly outlined by law." **Pleva v. Norquist**, 195
F.3d 905, 912 (7th Cir. 1999).

However, the Seventh Circuit consistently has rejected
arguments that stress an individual plaintiff's actual job
performance over the reliable, inherent characteristics of the
job, as described in either an official job description or by
law. **Riley**, 425 F.3d at 361 (*quoting* **Tomczak v. City of Chicago,**
765 F.2d 633, 641 (7th Cir. 1985)) ("Otherwise the courts - and
elected officials - would have 'the burden of having to re-
examine a certain position every time a new administration
changes the mix of responsibilities bestowed upon the office-
holder.'") The question of whether the First Amendment prohibits
political affiliation as an employment qualification is a factual
inquiry, properly left to the jury. **Pleva**, 195 F.3d at 912.
However, when that inquiry is focused upon a position subject to
a reliable job description or clearly described by law, the court
faces "a question of law informed solely by the job description

11

and the powers of the office." *Pleva,* 195 F.3d at 912*; Riley*, 425 F.3d at 361 (*citing Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2nd Cir. 1998)).

The record in this matter includes no job descriptions. Further clouding matters, the parties present no agreement on what position Cantrell held or on what legal basis he served twice a week on the bench of the East Chicago City Court. The defendants, for instance, consistently refer to Cantrell's position as that of "referee or judge pro tem." (Def. Motion, pp. 1, 9, 12) In their statement of facts, they describe Cantrell, without dispute, as a judge pro tem. However, they also base their arguments on provisions of the Indiana Code that describe city court referees. *See* I.C. 33-35-3-5. Cantrell resists the characterization of his role as that of referee:

> Q.   So you served as referee for Judge Fontanez?
>
> A.   I never served as a referee. I had to swear in every time as a judge pro tem in the clerk's office.
>
> Q.   Well, that's what a referee does; they take the same oath of office.
>
> A.   I was a judge pro tem for him.
>
> Q.   For Judge Fontanez?
>
> A.   Yes.
>
> (Cantrell Dep. p. 28)

In fact, the oath that Cantrell signed each time he served indicated that he would "faithfully and impartially perform the duties of the office of Judge Pro Tem of the City of East Chi-

cago." (Def. Ex. 6) In contrast, Morris' testimony indicated that she perceived Cantrell as a referee. (Morris Dep. p. 19)

Indiana law does not shed much light on this issue. There are only limited provisions under which Cantrell would have been permitted to serve from the bench in any capacity. The defendants, though apparently using the terms judge pro tem and referee interchangeably, rely on Indiana Code 33-35-3-5[1]. This statute, entitled "City Court Referee," provides:

> (a) The common council of a city having a city court may create the position of city court referee to assist the city court judge in the administration of the judge's duties and the disposition of matters pending in the court. The common council may authorize more than one (1) referee. After authorization is granted, the judge shall appoint one (1) or more referees. The referee or referees serve at the pleasure of the judge.

This statute also generally describes the qualifications and limits to a referee's duties:

> (b) A referee shall take the same oath of office as provided for the judge and must have the same qualifications for office as required for the judge. A referee may administer oaths in the performance of the referee's duty and use the seal of the court. In all cases coming before the referee, the referee shall comply with the requirements of procedure provided for the hearing of cases by the court. The referee shall make a return of the referee's findings and recommendations in writing to the court, and the court shall proceed to enter the order, judgment, or decree that the court considers proper.

Indiana courts have held that this position is that of a

---

[1]This provision was enacted in 2004, prior to the events of this case. However, the new statute made only minor changes to the former, I.C. 33-10.1-6-5, which are not relevant to this matter.

"fact finder, and the judge is not bound by his findings." ***Stokes v. State of Indiana***, 343 N.E.2d 788, 789 (Ind. App. 1976). The Indiana appellate court further stated that the referee is entitled to "hear witness and receive evidence," but has "no authority, either express or implied, to issue orders or decrees which represent binding judicial determinations." ***Stokes***, 343 N.E.2d at 789.

There is no evidence in the record that, at the time Fontanez assigned Cantrell to the bench, the East Chicago Common Council had authorized this position or approved a salary for this position.  In fact, the record indicates that there was no referee position when Cantrell served. In addition, the parties' evidence regarding Cantrell's actual performance of this role, suggesting that he regularly ruled on motions and entered judgments, is inconsistent with the statutory provision defining a referee as primarily a fact-finding role.

An alternative, not explicitly addressed by either party, is that Cantrell served according to Indiana Trial Rule 63(E)[2]:

> A judge who is unable to attend and preside
> at his court for any cause may appoint in
> writing a judge pro tempore to conduct the
> business of this court during his absence.
> The written appointment shall be entered in
> the records of the court. When duly sworn, or
> without being sworn if he is a judge of a
> court of this state, the judge pro tempore
> shall have the same authority during the
> period of his appointment as the judge he

---

[2]One additional possibility, also unaddressed by the parties, is I.C. 33-38-11-7, however, this provision pertains only to the assignment of "temporary judges" to the role of judge pro tem in circuit, superior, or county courts.

> replaces. A judge appointed under this provi-
> sion must meet the qualifications prescribed
> in subdivision (C) of this rule. Such judge
> shall be allowed the sum of $25.00 for each
> day or part thereof actually served, per diem
> as provided in Rule 79(14) and in the manner
> provided by subdivision (D) of this rule.

The parties present no argument that it was under this authority that Cantrell served, nor does the record indicate separate from Cantrell's oath of office, that Fontanez appointed Cantrell in a written order that was entered in the court's records consistent with this rule. The payroll evidence before the court, in fact, indicates that Cantrell's salary never deviated from that of a public defender. A judge pro tem, on the other hand, is paid $25.00 for each day served.

Morris leaves another primary issue unexplored. If Cantrell, who has testified he was not a referee, served as a judge pro tempore under Trial Rule 63(E), it has not been shown whether an agreement to serve a series of appointments of indefinite dura-tion creates an interest protected by the First Amendment or can be considered part of Cantrell's job as a public defender. The Seventh Circuit has addressed the latter question. *Kurowski v. Krajewski*, 848 F.2d 767, 771 (7th Cir. 1988)("Indiana Trial Rule 63 makes it pellucid that judicial service is not part of a public defender's duties in Indiana - one can be a public de-fender but not a judge pro tempore, or a judge pro tempore but not a public defender."). This question is further complicated by the fact that Cantrell apparently was not paid the nominal $25.00 as a Rule 63(E) judge pro tempore, but instead he continued to

15

collect the salary of a public defender. On this record, a
reasonable jury could conclude that Cantrell  remained a public
defender throughout his tenure with the East Chicago City Court.

   The only evidence presented to this court on which to
determine Cantrell's role is Cantrell's own testimony regarding
his actual performance. As already noted, in the context of a
patronage dismissal claim, reliance on such evidence has been
"consistently rejected." *See* ***Riley***, 425 F.3d at 361.  As a
result, the defendant has presented no credible basis on which to
look past Cantrell's job as a public defender. *See* ***Thompson v.***
***Illinois Dept. of Professional Regulation,*** 300 F.3d 750, 756 (7th
Cir. 2002)("[W]e look at the nature of the responsibilities and
focus on the duties inherent in an office, and not the functions
of the position performed by a particular person.").

   If this case presented only a determination of whether a
particular position, as described by either an official job
description or Indiana statute, was a policymaking position
subject to termination on the basis of political affiliation, the
court would face a question of law appropriately resolved at
summary judgment. In this matter, precedent factual and legal
questions dominate the inquiry. Among those already noted, these
questions regard the basis under which Fontanez appointed Can-
trell; whether the City or court maintained a job description for
any of the positions at issue here, including public defender or
referee; whether Cantrell's regular service on the bench, if done
under Trial Rule 63, altered his status on the City's payroll as

16

a public defender; whether the City authorized the position of referee at the time that Cantrell was appointed; and ultimately, whether it can be determined that Cantrell held a position other than that of public defender. In light of these unresolved matters, rendered in the light most favorable to Cantrell, summary judgment on this basis is not appropriate.

The parties largely do not address whether Cantrell has made out a prima facie case of a patronage dismissal. The plaintiff's prima facie case must show that affiliation was a substantial factor leading to the discharge. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992)(*citing Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d. 471 (1977). The plaintiff's burden extends beyond merely "showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998). Rather, the plaintiff must show a causative relationship between his political affiliation and the employer's actions. *Massey v. Johnson*, 457 F.3d 711, 716-717 (7th Cir. 2006). The plaintiff need not show this causal link was a but-for factor, and he may make out a prima facies case with circumstantial proof "such as the timing of events or the disparate treatment of similar individuals." *Masse*y, 457 F.3d at 717.

The plaintiff's initial requirement in proving discharge based upon political affiliation is to demonstrate that the

17

defendant was aware of the plaintiff's political association. **Garrett**, 961 F.2d at 622 (*citing* **Cusson-Cobb v. O'Lessker**, 953 F.2d 1079 (7th Cir. 1992)); **Nelms**, 153 F.3d at 815 ("Nelms first must prove that defendants knew of his Republican party membership."). If accomplished, the defendant may demonstrate a legitimate, nonpolitical reason for the discharge. **Garrett**, 961 F.2d at 633 ("Barnes does not have to prove a legitimate reason for firing Garrett until Garrett has come forth with sufficient evidence to support a prima facie case of retaliation.").

Morris' only apparent attack on Cantrell's prima facie case is that his complaint is "silent" regarding the First Amendment protection that he claims. (Memo. p. 12) This statement is not accurate. Cantrell alleged that he was terminated "on account of him being allied with Defendant's political adversaries;" that he "actively and openly supported the candidacy of Corinth Bishop II" and was retaliated against following Bishop's defeat by Morris; and that these actions constituted a "denial of rights to free speech and association." (Comp. pp. 1, 2, 3) There is no lack of notice regarding the claim Cantrell has asserted or the factual basis for that claim.

In addition, Morris gave conflicting testimony concerning her familiarity with the Cantrell family. In one instance, she stated that she was not aware of Cantrell or his father. Later, Morris testified that the senior Cantrell had threatened her following the primary if she did not employ his drug counseling company. Although the court cannot resolve factual disputes on

18

summary judgment, it strains credibility when Morris denied knowledge of a family politically active in East Chicago politics.

Morris, after saying little regarding Cantrell's prima facie case, says little more under her burden of showing that he was terminated for legitimate reasons. Morris presents only a single statement in support of this point that merely restates her initial argument that Cantrell did not occupy a protected position. Even if Cantrell was not in a "policymaking position," she argues, his termination was made for legitimate reasons because the position was "inherently political, which is not safeguarded from political patronage termination." (Memo p. 7) This circular reasoning does not support the grant of summary judgment.

The defendant's assertion of qualified immunity suffers from the same lack of clarity regarding which position Cantrell held. Qualified immunity shields government officials from suits for civil damages based upon the performance of discretionary functions. ***Borello v. Allison***, 446 F.3d 742, 746 (7th Cir. 2006). The defense is available provided the defendant's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Flenner v. Sheahan***, 107 F.3d 459, 461 (7th Cir. 1997). The affirmative defense protects a defendant from liability and from the need to defend a claim for civil damages at trial. ***Borello***, 446 F.3d at 746. *See also **Donovan v. City of Milwaukee***, 17 F.3d 944, 952 (7th Cir. 1994)("[Q]ualified immunity is designed to shield from civil

19

liability all but the plainly incompetent or those who knowingly violate the law.")(internal quotations omitted). However, the defense generally does not reach fully equitable claims. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000)("Because the doctrine of qualified immunity should not stand as an impediment to the clarification and evolution of a court's articulation of constitutional principles, we evaluate the constitutionality of the official's conduct even though, in the end, he may not be held liable for monetary damages flowing from that conduct.").

Once raised as an affirmative defense, the plaintiff must show that the right allegedly violated was clearly established at the time the violation occurred. *Borello*, 446 F.3d at 746. The plaintiff "need not direct the court to cases on all fours with the case at bar; however, case law in a closely analogous area is crucial to permit us to conclude that reasonably diligent government officials would have known of the case law, related it to the situation at hand, and molded their conduct accordingly." *Donovan*, 17 F.3d at 952 (internal citations and quotations omitted).  In the context of a patronage dismissal case, this requirement often has been difficult. *Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir. 1997)(*quoting* *Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir. 1991)("Indeed, it is difficult to imagine how any plaintiff . . . could have a clearly established right to be free from patronage dismissal unless a nearly identical case had already been decided."); *Riley*, 425 F.3d at 359 ("Identifying those jobs is no mean feat."). However, the plaintiff need not

present precedent regarding the exact position in question, but instead he can show through analogous positions that the "unlawfulness of [the] . . . actions was apparent." **Flenner**, 107 F.3d at 465.

The same factual inquiries that preclude summary judgment on Cantrell's patronage dismissal claim render Morris' assertion of qualified immunity premature. Cantrell, for instance, argues that his position, if not his performance, requires this court to conclude that he never was anything more than a public defender. Since **Branti**, the role of public defender has been clearly defined as falling within the protection of the First Amendment. **Branti**, 445 U.S. at 519, 100 S.Ct. at 1295 ("[I]t is manifest that the continued employment of an assistant public defender cannot properly be conditioned upon his allegiance to the political party in control of the county government."). *See also* ***Larson v. Cantrell***, 974 F.Supp. 1211, 1216 (N.D. Ind. 1997) ("[A]uthority already exists to the effect that public defender positions like Plaintiff Thorpe's are protected."). Because the court has concluded that a reasonable jury could find that Cantrell held the position of public defender, despite actually performing divergent duties, it follows that Morris may not be entitled to the defense of qualified immunity. Further, qualified immunity, which may shield Morris from personal civil liability, does not prevent Cantrell's claims for injunctive relief from proceeding against Morris in her official capacity. Accordingly, the defendant's motion for summary judgment on Cantrell's First Amendment

claim is **DENIED**.

Following the Indiana Supreme Court's decision in this matter, the parties dispute whether Cantrell has made a state law claim for wrongful discharge. If so, Morris seeks leave to amend her answer to Cantrell's amended complaint to raise Cantrell's failure to comply with the notice requirements of the Indiana Tort Claims Act. Throughout briefing in this case, neither party has raised or defended a claim of wrongful discharge until now. The parties have addressed Cantrell's claim under the Indiana Constitution only as a cause of action arising directly under Article I, Section 9 of the Indiana Constitution. The supreme court foreclosed this cause of action.

Even if the court construed Cantrell's complaint to state a claim of wrongful discharge, Morris would be entitled to amend her answer to raise an affirmative defense under the Tort Claims Act. Federal Rule of Civil Procedure 15(a) permits amendments to the pleadings, including answers, "which shall be freely given." *Jackson v. Rockford Housing Authority*, 213 F.3d 389, 393 (7th Cir. 2000)("The general rule that amendment is allowed absent undue surprise or prejudice to the plaintiff is widely adhered to by our sister courts of appeal."); *Larkin v. Galloway*, 266 F.3d 718, 722 (7th Cir. 2001)("[L]eave to amend is inappropriate where there is bad faith, dilatory motive on the part of the movant or undue prejudice to the opposing party by virtue of allowance of the amendment.").

22

Cantrell does not suggest that the proposed amendment is the
product of bad faith or likely to cause prejudice. In fact,
Cantrell offers no argument to suggest that Morris should be
denied leave to amend her answer. Instead, Cantrell appears to
assume application of the ITCA and argues that the Act's notice
requirements otherwise should be forgiven under equitable doc-
trines of substantial compliance, waiver, and estoppel. Under the
circumstances of this case, the doctrines are inapplicable.
Cantrell asks this court to find substantial compliance solely
from the fact that he timely filed a civil suit in federal court.
This argument misunderstands the plain language and purpose of
the ITCA. *See **Irwin Mortgage Corporation v. Marion County Trea-
surer***, 816 N.E.2d 439, 446 (Ind. App. 2004)(finding that the
purpose of the Act is to provide the state with an opportunity to
investigate and determine its potential liability before a suit
is filed.); **Fowler v. Brewer,** 773 N.E.2d 858, 863 (Ind. App.
2002)***. See also* **City of Tipton v. Baxter**, 593 N.E.2d 1280, 1283
(Ind. App. 1992) (finding substantial compliance where adverse
party was shown to have had actual knowledge of the claim prior
to the filing of suit.).

Cantrell's assertion of estoppel fares no better. Estoppel
requires an affirmative act on the part of the defendant that
induced the plaintiff to believe formal notice was not necessary.
*See **Baxter***, 593 N.E.2d at 1282 n. 1. *See also* **Davidson v. Perron**
716 N.E.2d 29, 34 (Ind. App. 1999) (describing estoppel as
appropriate when the government engages in "a subterfuge to bar a

23

claim for failure to comply with the notice provisions of the
ITCA."). Cantrell asks this court to find estoppel in nothing
more than the fact that Morris raised this defense belatedly.
Absent some affirmative indication that the defendants knowingly
waived these rights, Cantrell's waiver and estoppel arguments
fall short. *See Rosga v. City of Hammond*, 493 N.E.2d 787, 789
(Ind. App. 1985) ("There is nothing in the mere act of either
investigation or failure to investigate from which a trial court
might reasonably infer that the governmental unit intended to
voluntarily relinquish its known right to receive a sufficient
notice of claim.").

Finally, the relation-back provisions of Rule 15(c) might
operate to cure any statute of limitations problem. *Peterson v.
Sealed Air Corporation*, 902 F.2d 1232, 1234 (7th Cir. 1990)
("[T]here is solid argument that [Federal] Rule 15(c) applies to
diversity cases."). However, this provision would not cure the
fact that Cantrell did not comply with the separate 180-day
notice requirement of the ITCA. *See Morlan v. Universal Guaranty
Life Insurance Company*, 298 F.3d 609, 617 (7th Cir. 2002)("The
only significance of relation back is avoidance of the bar of the
statute of limitations."). If Cantrell had intended to state a
claim for wrongful discharge, regardless of the underlying
violation supporting it, the Indiana Supreme Court has been
clear, since 1990, that this claim is subject to the ITCA. *Holz
v. Board of Commissioner of Elkhart County*, 560 N.E.2d 645, 647
(Ind. 1990)(holding that a wrongful discharge claim is a tort and

24

stating "[w]e cannot interpret the Tort Claims Act as applying only to some torts.") Whether this court concludes that Cantrell already has stated this claim or should be granted leave to amend his complaint, it is barred by the ITCA. In light of the Indiana Supreme Court's decision, Morris' motion for summary judgment on Cantrell's claim under Article I, Section 9 is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**. The defendant's motion to amend her answer is **DENIED AS MOOT**.

—————————————

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Sonya A. Morris, on August 18, 2006 (DE 50) is **GRANTED IN PART** and **DENIED IN PART**; the Motion to Exclude Evidence Designated in Support of Plaintiff's Response to Motion for Summary Judgment (DE 57) filed by the defendant on September 28, 2006 is **DENIED**; and the Motion for Leave to File Amended Answer to Assert Additional Affirmative Defenses (DE 56) filed by the defendant on September 28, 2006 is **DENIED AS MOOT**.

ENTERED this 14th day of December, 2006

                    s/ ANDREW P. RODOVICH
                       United States Magistrate Judge

25